AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Alabama ⏷

| | |
|---|---|
| HANCOCK WHITNEY BANK | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| COWBOY XM MOTORSPORT, INC. and | ) |
| LATOERIA D. BYRD | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

Civil Action No. 22-5

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Cowboy XM Motorsport, Inc.
c/o Registered Agent
Laurence Triplett
1733 Aspen Wood Court
Mobile, Alabama  36609

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   R. Alan Alexander, Esquire
Helmsing, Leach, Herlong, Newman & Rouse, P.C.
150 Government Street, Suite 2000
Mobile, Alabama  36602

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 22-5

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .


I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                                    *Server's signature*

                                                        _____
                                                                    *Printed name and title*


                                                        _____
                                                                    *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Alabama ▾

| | |
|---|---|
| HANCOCK WHITNEY BANK | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) |
| COWBOY XM MOTORSPORT, INC. and | ) |
| LATOERIA D. BYRD | ) |
| | ) |
| | ) |
| _Defendant(s)_ | ) |

Civil Action No. 22-5

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

    Latoeria D. Byrd
    2895 Rebecca Drive E.
    Mobile, Alabama  36618

    A lawsuit has been filed against you.

    Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

    R. Alan Alexander, Esquire
    Helmsing, Leach, Herlong, Newman & Rouse, P.C.
    150 Government Street, Suite 2000
    Mobile, Alabama  36602

    If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

                                                    *CLERK OF COURT*

Date: _____                    _____
                                                    *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 22-5

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

**IN THE UNITED STATES DISTRICT COURT OF ALABAMA
SOUTHERN DISTRICT, SOUTHERN DIVISION**

| | | |
|---|---|---|
| HANCOCK WHITNEY BANK, | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. CV: 22- |
| COWBOY XM MOTORSPORT, INC. and LATOERIA D. BYRD, | § | |
| | § | |
| Defendants. | § | |

## **COMPLAINT**

COMES NOW Plaintiff Hancock Whitney Bank formerly known as Hancock Bank ("Hancock Whitney"), and files its complaint against Defendants, Cowboy XM Motorsport, Inc. ("Cowboy XM") and Latoeria D. Byrd ("Byrd"). In support of this Complaint, Hancock Whitney states as follows:

## **Parties**

1.      Hancock Whitney is a Mississippi banking organization that is organized under the laws of the State of Mississippi with its principal place of business in Mississippi that routinely conducts business in the State of Alabama.

2.      Upon information and belief, Cowboy XM Motorsport, Inc. is a registered corporation in Alabama and conducted business in the State of Alabama. Its registered agent is Laurence Triplett, 1733 Aspen Wood Ct., Mobile, Alabama 36609.

3.      Upon information and belief, Latoeria D. Byrd is an individual citizen of Mobile County, Alabama.

## VENUE AND
## JURISDICTION

4.      Venue is proper in the Southern District of Alabama as the Defendants are residents of the Southern District of Alabama.

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332. For diversity jurisdiction purposes, Hancock Whitney is a citizen of Mississippi and Defendants, Latoeria D. Byard and Cowboy XM Motorsport, Inc. are citizens of Alabama; therefore, complete diversity of the parties is met. The amount in controversy exceeds $75,000 exclusive of interest and costs, the minimal limits of the Court for diversity jurisdiction.

## Factual Allegations

**Loan 33101340376**

6.      On November 17, 2020, Cowboy XM Motorsport, Inc. executed a Promissory Note (hereinafter the "0376 Note") in the amount of $125,000.00 in favor of Hancock Whitney.   A true and correct copy of the Note is attached hereto as **Exhibit "A"** and incorporated by reference for all purposes.

7.      Cowboy XM defaulted on Loan 0376.   Hancock Whitney accelerated the indebtedness pursuant to its terms and conditions.

8.      As of January 3, 2022, the outstanding amount owed to Hancock Whitney on Note 0376 is $109,403.17 which consists of $103.894.86 in principal; $1,233.65 in accrued

interest; late fees in the amount of $118.87 and penalty fees in the amount of $4,155.79. As of the date of this Complaint, interest continues to accrue at a rate of $15.15 per day.[1]

9.    The Note for Loan 0376 provides for recovery of costs of collection, including, without limitation, reasonable attorney's fees. (Ex. A).

**Commercial Guaranty Agreement for Loan 33101340376**

10.    On or about November 17, 2020, Defendant, Byrd, executed a Commercial Guaranty.  Pursuant to the Commercial Guaranty Agreement, Byrd unconditionally guaranteed the payment, performance, and complete fulfillment of all the obligations, whether then existing or thereafter acquired, of Cowboy XM to Hancock Whitney Bank.  A copy of the Commercial Guaranty Agreement is attached as **Exhibit "B."**

11.    Byrd defaulted under the terms of the Commercial Guaranty Agreement.  As of January 3, 2022, there is an outstanding balance in the amount of $109,403.17 based on the terms of the Commercial Guaranty Agreement.  This amount does not include continuing interest and continuing costs, expenses and attorneys' fees.

12.    The Commercial Guaranty Agreement also provides for recovery of costs of collection, including reasonable attorney fees.

**Corporate Credit Card**

13.    On or about January 22, 2021, Defendant, Cowboy XM, entered into a Credit Card Agreement and accompanying terms with Hancock Whitney Bank for a line of credit (hereinafter the "Credit Card Account Agreement").     A copy of Business Credit Card

---

[1]    The promissory note contains a variable interest rate and the per diem is subject to change.

Application is attached hereto as **Exhibit "C"** and incorporated by reference for all purposes.

14.     As part of the Credit Card Account Agreement Defendant, Byrd, unconditionally guaranteed the payment in full of all indebtedness incurred by Cowboy XM under the Credit Card Account Agreement.

15.     Cowboy XM and Byrd defaulted under the terms of Credit Card Account Agreement.  Hancock Whitney Bank accelerated the indebtedness contemplated therein.

16.     As of January3, 2022 there is an outstanding amount due in the total amount of $18,634.45.

17.     The Credit Card Account Agreement provides for recovery of costs of collection, including a reasonable attorney's fee.

**Loan 33101344311**

18.     On April 23, 2021, Cowboy XM Motorsport, Inc. executed a Promissory Note (hereinafter the "4311 Note") in the amount of $70,000.00 in favor of Hancock Whitney.  A true and correct copy of the 4311 Note is attached hereto as **Exhibit "D"** and incorporated by reference for all purposes.

19.     Cowboy XM defaulted on Loan 4311.  Hancock Whitney accelerated the indebtedness pursuant to its terms and conditions.

20.     As of January 3, 2022, the outstanding amount owed to Hancock Whitney on 4311 Note is $66,391.07 which consists of $65,791.26 in principal; $481.56 in accrued

interest; and late fees in the amount of $118.25. As of the date of this Complaint, interest continues to accrue at a rate of $7.77 per day.[2]

21.     The Note for Loan 0376 provides for recovery of costs of collection, including, without limitation, reasonable attorney's fees. (Ex. D).

**Commercial Guaranty Agreement for Loan 33101344311**

22.     On or about April 23, 2021, Defendant, Byrd, executed a Commercial Guaranty.  Pursuant to the Commercial Guaranty Agreement, Byrd unconditionally guaranteed the payment, performance, and complete fulfillment of all the obligations, whether then existing or thereafter acquired, of Cowboy XM to Hancock Whitney Bank.  A copy of the Commercial Guaranty Agreement is attached as **Exhibit "E."**

23.     Byrd defaulted under the terms of the Commercial Guaranty Agreement.  As of January 3, 2022, there is an outstanding balance in the amount of $66,391.07 based on the terms of the Commercial Guaranty Agreement.  This amount does not include continuing interest and continuing costs, expenses and attorneys' fees.

24.     The Commercial Guaranty Agreement also provides for recovery of costs of collection, including reasonable attorney fees.

**Count One – Breach of Contract-Promissory Notes - 0376 and 4311**

25.     Hancock Whitney re-asserts and re-alleges all allegations of paragraphs 1 through 24 of the Complaint as if fully set out herein.

---

[2]     The promissory note contains a variable interest rate and the per diem is subject to change.

26.     Hancock Whitney Bank and Cowboy XM entered into the above-referenced Promissory Notes-0376 and 4311 which were binding upon the parties.

27.     Hancock Whitney Bank performed as required under the agreements.

28.     Cowboy XM breached the agreements.

29.     Cowboy's Promissory Notes for Loans 0376 and 4311 provide for recovery of cost of collection, including reasonable attorney fees and expenses.

**Count Two – Breach of Contract – Commercial Credit Card**

30.     Hancock Whitney Bank re-asserts and re-alleges all allegations in paragraphs 1-29 as if fully set out herein.

31.     Hancock Whitney Bank and Defendants, Cowboy XM and Byrd, entered into the above-referenced Credit Card Agreement which were binding upon the parties.

32.     Hancock Whitney Bank performed as required under the Credit Card Account Agreement.

33.     Defendants breached the Credit Card Account Agreement.

34.     The Credit Card Account Agreement provides for recovery of cost of collection, including reasonable attorney fees and expenses.

**Count Three – Breach of Contract – Commercial Guaranty Agreements**

35.     Hancock Whitney Bank re-asserts and re-alleges all allegations in paragraphs 1-34 as if fully set out herein.

36.     Hancock Whitney Bank and Byrd entered into the above-referenced Commercial Guaranty Agreements which were binding upon the parties.

6

37.     Hancock Whitney Bank performed as required under the agreements.


**RELIEF REQUESTED**

WHEREFORE, Hancock Whitney Bank requests that this Court grant judgment in its favor and against Defendants, Cowboy XM Motorsport, Inc. and Latoeria Byrd as follows:

(a)     General damages Under Count One against Defendant Cowboy XM Motorsport, Inc. in the amount of $109,403.17, for Note-0376 plus the applicable per diem;

(b)     Additional prejudgment interest as provided by the Promissory Note-0376;

(c)     General damages Under Count One against Defendant Cowboy XM Motorsport, Inc. in the amount of $66,391.07, for Note-4311 plus the applicable per diem;

(d)     Additional prejudgment interest as provided by the Promissory Note-4311;

(e)     General damages against Byrd and Cowboy XM Motorsport as to Count Two, the Commercial Credit Card as the net unpaid balance due of $18,634.45 as of January 3, 2022.

(f)     General damages Under Count Three against Defendant Byrd in the amount of  $109,403.17 for Note-0376; and $66,391.07 for Note-4311

(f)     All incurred, accruing and future reasonable attorney's fees and costs, plus reasonable attorney's fees and costs that may be incurred in the event of any appeals and/or post judgment enforcement and/or collection efforts;

(d)     all accruing late charges and fees;

(e)    All costs of court;

(f)    Interest at the maximum rate provided by the Promissory Notes for Loans 03776 and 4311 and Alabama law on the total amount of the judgment, from the date of judgment until paid in full; and

(g)    Such other and further relief to which Hancock Whitney Bank may be entitled.

Respectfully submitted this __6th__ day of January 2022.

> HELMSING, LEACH, HERLONG,
> NEWMAN & ROUSE, P.C.
>
> 
>
> Jeffery J. Hartley  (HARTJ4885 )
> R. Alan Alexander (ALEXR7480)
> Counsel for Plaintiff,
> HANCOCK WHITNEY BANK
>  Post Office Box 2767
>  Mobile, AL 36652
>  (251) 432-5521; (251) 432-0633 Fax
>  jjh@helmsinglaw.com
>  raa@helmsinglaw.com

**NOTE TO CLERK:**
**Defendant to be served via process server at:**

Cowboy XM Motorsport, Inc.
148 A E I-65 Service Road N.
Mobile, Alabama  36607

Latoeria D. Byrd
2895 Rebecca Dr. E.
Mobile, Alabama  36618

4843-4572-6206, v. 1

8

# PROMISSORY NOTE

**EXHIBIT A**

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $125,000.00 | 11-17-2020 | 11-17-2025 | 30033101340376 | | | A2A | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  COWBOY XM MOTORSPORT INC.
148 A E I 65 Service Rd N
Mobile, AL  36607

**Lender:**  HANCOCK WHITNEY BANK
DAUPHIN STREET BUS BNKG
25 N BELTLINE HWY
MOBILE, AL  36608

**Principal Amount: $125,000.00**    **Date of Note:  November 17, 2020**

**PROMISE TO PAY.**  COWBOY XM MOTORSPORT INC. ("Borrower") promises to pay to HANCOCK WHITNEY BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Twenty-five Thousand & 00/100 Dollars ($125,000.00), together with interest on the unpaid principal balance from November 17, 2020, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.250% per annum based on a year of 360 days, until paid in full.  The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.**  Borrower will pay this loan in 59 payments of $2,377.33 each payment and an irregular last payment estimated at $2,377.75. Borrower's first payment is due December 17, 2020, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on November 17, 2025, and will be for all principal and all accrued interest not yet paid.  Payments include principal and interest.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs.  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.**  Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this Note is computed using this method.  This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**PREPAYMENT PENALTY.**  Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  Upon prepayment of this Note, Lender is entitled to the following prepayment penalty:  The Borrower may not prepay the unpaid principal balance of this loan in full at any time prior to six (6) months before Maturity unless the Borrower concurrently pays a prepayment penalty to the Lender as set forth in this Note. Upon the Borrower's prepayment of the loan in full (i) within the one (1) year of the Date of Note, the prepayment penalty will equal five percent (5%) of the unpaid principal balance; (ii) within two (2) years of the Date of Note, the prepayment penalty will equal four percent (4%) of the unpaid principal balance; (iii) within three (3) years of the Date of Note, the prepayment penalty will equal three percent (3%) of the unpaid principal balance; (iv) within four (4) years of the Date of Note through six (6) months before Maturity, the prepayment penalty will equal two percent (2%) of the unpaid principal balance of the Loan.  No prepayment penalty shall be assessed on partial prepayments of 20% or less of the outstanding principal balance of the Note during any twelve month period.  Partial prepayments of the Loan exceeding 20% of the then outstanding principal balance in any twelve month period shall be subject to a prepayment penalty assessed against the amount of such prepayment based on the prepayment penalty percentage that would be applicable to a prepayment in full at the time of such partial prepayment. Lender shall be under no obligation to release any collateral held for the loan until the applicable prepayment penalty has been paid to Lender.  Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  HANCOCK WHITNEY BANK, LENDING SERVICES, P. O. BOX 211269 MONTGOMERY, AL  36121.

**LATE CHARGE.**  If a payment is 10 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.**

**INTEREST AFTER DEFAULT.**  Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 18.000% per annum based on a year of 360 days.  However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.**  Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.**  Borrower fails to make any payment when due under this Note.

**Other Defaults.**  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.**  Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.**  The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any

**PROMISSORY NOTE**
**(Continued)**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of MOBILE County, State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the collateral referenced in the separate security document(s).

**FINANCIAL STATEMENTS AND INFORMATION.** Borrower agrees to provide to the Lender upon request both true and correct current financial statements and tax returns in form and substance satisfactory to the Lender. The financial statements shall include, among other things, detailed information regarding (i) any entities, such as corporations, partnerships, or limited liability companies of which the Borrower is the majority owner and (ii) any entities of which the Borrower is not the majority owner, but for which Borrower is directly or contingently liable on debts or obligations of any kind incurred by those entities. All financial statements or records submitted to Lender via electronic means, including, without limitation by facsimile, open internet communications or other telephonic or electronic methods, including, without limitation, documents in Tagged Image Format Files ("TIFF") or Portable Document Format ("PDF") shall be treated as originals, fully binding and with full legal force and effect and the parties waive any rights they may have to object to such treatment. The Lender may rely on all such records in good faith as complete and accurate records produced or maintained by or on behalf of the party submitting such records.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further collateral security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, and for the payment and performance of all agreements with respect to any swap, forward, future, or derivative transaction or option or similar agreement involving, or settled by reference to, one or more interest rates, currencies, commodities, equity or debt instruments or securities, or economic, financial or pricing indices or measures of economic, financial or pricing risk or value, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**ADDITIONAL RIGHT OF SETOFF.** In addition, in order to further secure all obligations, Borrower pledges to Lender, and grants to Lender a continuing lien and security interest in, and a right of set-off on, all property of Borrower, including any such property Borrower holds jointly with someone else, that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender or any financial institution affiliate of the Lender, including, without limitation, all cash, deposit accounts, funds on deposit, stocks, bonds, treasury obligations and other securities, investment property, financial assets, securities accounts, notes, documents, instruments, certificates of deposit, items, chattel paper, and other property (except IRA, pension, other tax-deferred retirement accounts and any accounts or property held in a trust or fiduciary capacity for which setoff would be prohibited by law), together with all property added to or substituted for any of the foregoing, and all interest, dividends, income, fruits, accessions and proceeds of any of the foregoing.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accommodation party (or any one of them) on this Note.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**WAIVER OF JURY TRIAL.** Borrower and Lender knowingly, voluntarily and irrevocably waive, to the fullest extent permitted by applicable law, any and all rights either may have to trial by jury in any legal proceeding based on, arising out of, or in any way related to: this Agreement, the obligations, any notes, loan agreements, or any other loan document or agreement executed or contemplated to be executed in connection with any of the obligations; or any of the transactions contemplated hereby or thereby. This jury waiver also applies to any claim, counterclaim, cause of action or demand arising from or related to (i) any course of conduct, course of dealing, or relationship of Borrower, any obligor, or any other person with Lender or any employee, officer, director or assignee of Lender in connection with the obligations; or (ii) any statement (whether verbal or written) or actions of any person by or on behalf of Lender to Borrower, any obligor, or any other person in connection with the obligations, regardless of whether such cause of action or demand arises by contract, tort or otherwise. Borrower hereby acknowledges that this waiver of jury trial is a material inducement to the Lender in extending credit to the Borrower, that the Lender would not have extended such credit without this jury trial waiver, and that Borrower has been represented by an attorney or has had an opportunity to consult with an attorney in connection with this jury trial waiver and understands the legal effect of this waiver. Borrower further certifies that no person has represented to it, expressly or otherwise, that Lender or any other person would not, in the event of a legal proceeding, seek to enforce the foregoing waiver.

**SALE/ASSIGNMENT.** Borrower acknowledges that Lender has the right to sell, assign, transfer, negotiate, or grant participations in all or any part of this Note and any related obligations, without notice to the undersigned or any other obligor and that Lender may disclose any documents and information which Lender now has or later acquires relating to the Borrower or to any collateral or to any obligor or this Note in connection with such sale, assignment, transfer, negotiation, or grant. Borrower agrees that Lender may provide information relating to this Note or relating to Borrower to Lender's parent, affiliates, subsidiaries and service providers.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives,

**PROMISSORY NOTE**
**(Continued)**

Loan No: 30033101340376

Page 3

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

COWBOY XM MOTORSPORT INC.

By: _____(Seal)
Latoeria D Byrd, President of COWBOY XM
MOTORSPORT INC.

# COMMERCIAL GUARANTY

<span style="color:red">EXHIBIT B</span>

| Borrower: | COWBOY XM MOTORSPORT INC.<br>148 A E I 65 Service Rd N<br>Mobile, AL  36607 | Lender: | HANCOCK WHITNEY BANK<br>DAUPHIN STREET BUS BNKG<br>25 N BELTLINE HWY<br>MOBILE, AL  36608 |
|---|---|---|---|
| Guarantor: | Latoeria D Byrd<br>2895 Rebecca Dr E<br>Mobile, AL  36618 | | |

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. **It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).**

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:** (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form

**COMMERCIAL GUARANTY**
**(Continued)**

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender  (A)  to continue lending money or to extend other credit to Borrower;  (B)  to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations;  (C)  to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor;  (D)  to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person;  (E)  to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code;  (F)  to pursue any other remedy within Lender's power; or  (G)  to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of  (A)  any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale;  (B)  any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness;  (C)  any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness;  (D)  any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness;  (E)  any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or  (F)  any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness.  If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law.  If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.**  To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.**  Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent.  Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower.  In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness.  If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender.  Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**ADDITIONAL MEANING OF THE WORDS RELATED DOCUMENTS.** To the extent permitted by applicable law, when used in this Agreement, the meaning of the words "Related Documents" shall include, in addition to and without limiting the definition ascribed to the words "Related Documents" herein, all agreements with respect to any swap, forward, future, or derivative transaction or option or similar agreement involving, or settled by reference to, one or more interest rates, currencies, commodities, equity or debt instruments or securities, or economic, financial or pricing indices or measures of economic, financial or pricing risk or value.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Guaranty:

**Amendments.**  This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty.  No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.**  Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty.  Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement.  Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.**  Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.  This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions.**

**Choice of Venue.**  If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of MOBILE County, State of Alabama.

**Integration.**  Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty.  Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**COMMERCIAL GUARANTY**
**(Continued)**

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waiver of Jury Trial.** Borrower and Lender knowingly, voluntarily and irrevocably waive, to the fullest extent permitted by applicable law, any and all rights either may have to trial by jury in any legal proceeding based on, arising out of, or in any way related to: this Agreement, the obligations, any notes, loan agreements, or any other loan document or agreement executed or contemplated to be executed in connection with any of the obligations; or any of the transactions contemplated hereby or thereby. This jury waiver also applies to any claim, counterclaim, cause of action or demand arising from or related to (i) any course of conduct, course of dealing, or relationship of Borrower, any obligor, or any other person with Lender or any employee, officer, director or assignee of Lender in connection with the obligations; or (ii) any statement (whether verbal or written) or actions of any person by or on behalf of Lender to Borrower, any obligor, or any other person in connection with the obligations, regardless of whether such cause of action or demand arises by contract, tort or otherwise. Borrower hereby acknowledges that this waiver of jury trial is a material inducement to the Lender in extending credit to the Borrower, that the Lender would not have extended such credit without this jury trial waiver, and that Borrower has been represented by an attorney or has had an opportunity to consult with an attorney in connection with this jury trial waiver and understands the legal effect of this waiver. Borrower further certifies that no person has represented to it, expressly or otherwise, that Lender or any other person would not, in the event of a legal proceeding, seek to enforce the foregoing waiver.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means COWBOY XM MOTORSPORT INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Latoeria D Byrd, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means HANCOCK WHITNEY BANK, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED NOVEMBER 17, 2020.

THIS GUARANTY IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS GUARANTY IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**GUARANTOR:**

X _____ (Seal)
Latoeria D Byrd

**EXHIBIT C**



# Business Credit Card Application

## A. Business Profile

Card Type: ☒ Points Plus Business Rewards Card  ☐ Business Credit Card

Card Design: ☐ LSU  ☒ Hancock Whitney  |  ☒ New Account  ☐ Limit Increase     Billing Type: ☐ Individual  ☒ Corporate

Cowboy XM Motorsports Incorporated

| | | | | | 82-4791304 |
|---|---|---|---|---|---|
| Company's Legal Registered Name (as it appears on tax returns) | | | Company (or DBA) Name | | Federal Tax ID # |
| Cowboy Xm Motorsports | | | | | |

Business Name (as it should appear on card(s) — Maximum 24 characters, including spaces and punctuation)

| 148 East I 65 Service RD | Mobile | Al | 36607 | 05/2017 |
|---|---|---|---|---|
| Business Street Address | City | State | Zip | Owner Since (mm/yyyy) |

| Mailing Address (if different than above) | City | State | Zip | Date Established (mm/yyyy) |
|---|---|---|---|---|
| (251) 656-8784 | | | Used Auto Dealer | |
| Business Phone | Fax Number | | Nature of Business | |

Ownership Structure:  ☐ Sole Proprietorship  ☐ Partnership  ☒ Corporation  ☐ Limited Liability Corporation  ☐ Nonprofit  ☐ Other (please describe)

| $ 5,023.00 | $ 123,000.00 | $ 90,118.00 | $ 2,789,995.00 |
|---|---|---|---|
| Total Assets | Total Liabilities | Net Income | Gross Revenues |

## B. Owner/Guarantor Profile (A Card Will Be Issued For Each Owner)

Please provide the following information on each owner, partner, principal, member or co-applicant (as applicable). Attach additional pages if needed. Please designate a controlling person by checking the appropriate box for one owner.

| Latoeria D Byrd | 100.00 |
|---|---|
| Name | % of ownership |

### FINANCIAL INFORMATION
$ 67,000.00

4802392000347867

| Social Security Number | DOB |
|---|---|
| Owner | $ 100,868.00 |

Total Assets: $ 0.00

| Occupation | Annual Wages |
|---|---|
| 2895 Rebecca Dr E | |

Mortgages: $ 5,500.00

| Home Address | | | |
|---|---|---|---|
| Mobile | Al | 36618 | |
| City | State | Zip | |
| | Alabama | 9/6/2018 | 9/8/2023 |

Total Liabilities (include Home Loan): $ 0.00

| Driver's License or Government ID No. | Issuing Authority | Issue Date | Exp. Date |
|---|---|---|---|
| Cowboyxm@gmail.com | (251) 656-8784 | | |
| Email Address | Home Phone | | |

Annual Other Income*: 0

Source of Other Income

*Alimony, Child Support or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.

US Citizen or Permanent Alien  ☒ Yes  ☐ No     Designated Controlling Person  ☒ Yes  ☐ No

I, Latoeria Byrd _____ (name of person opening account), hereby certify, to the best of my knowledge, that the information provided for each owner/guarantor is complete and correct. I further agree on behalf of the legal entity for which I am opening this account that we will notify the bank of any changes in the information provided about owners.

| _____ | Owner | 1/22/2021 |
|---|---|---|
| Signature-Designated Controlling Person | Title | Date |

### The following questions refer to company, principal(s), endorser(s), guarantor(s) and/or co-maker(s).

| | | | | |
|---|---|---|---|---|
| Owe(s) any delinquent taxes? | ☐ Yes  ☒ No | Has ever filed bankruptcy or defaulted on any debt? | ☐ Yes  ☒ No |
| Is in violation of any applicable state/federal law? | ☐ Yes  ☐ No | Is party to any claim or lawsuit? | ☐ Yes  ☒ No |
| Is the business liable for any amounts via leases, guaranties, commitments or other contingency arrangements? | | | ☐ Yes  ☒ No |

## C. Additional Card Holders (Other Than Owners)

Please print the individual name(s) as it should appear on their card (attach additional pages if needed).     Individual Credit Limits:

| Name | Email | Last 4 Digits of SSN | DOB |
|---|---|---|---|
| Name | Email | Last 4 Digits of SSN | DOB |

## D. Joint Application Confirmation
If you have supplied information on a co-applicant or guarantor, please initial below to apply for joint credit.

☒ We intend to apply for Joint Credit     _____ Initials     _____ Initials     _____ Verbal Confirmation by Lender

## E. Authorization To Establish Visa® Business Credit Card Account
(Attach Additional Page With This Section As Needed)

It is hereby resolved by unanimous consent of all of the owners, partners or members of **Cowboy XM Motorsports Inc** _____ (the "Applicant"), as evidenced by their signatures below, that Applicant wishes to establish with Hancock Whitney Bank, (the "Bank") a Visa Business Credit Card Account (the "Account"). The Applicant warrants and represents that, should Bank approve Applicant's request for a Visa Business Credit Card Account, it assumes full liability for all indebtedness incurred by card holder (sometimes, the "Card Holder") pursuant to the establishment of this Visa Business Credit Card, and, further, that the Account will be used solely for the purpose of purchasing goods and services and/or obtaining cash advances to be used solely for the business purposes of the Applicant or for a purpose incidental to its business. Resolved, further, that each and any one of the persons signing below as "Owner/Guarantor" is authorized to establish the Account, grant to Bank security rights in Applicant's property, personal or real, as security for the Account and to sign and execute all documents of whatever kind and nature to effect the foregoing purposes. It is further resolved that each and any one of the Owners/Guarantors signing below is authorized to revoke the credit card issued to any one or more of the individual "Additional Card Holders" named above and to designate one or more additional individuals as Additional Card Holders to be issued credit cards under the Account, with such credit limits as such Owner/Guarantor deems appropriate in his/her sole discretion. By signing below, each Owner/Guarantor hereby certifies that the foregoing resolution has been duly and unanimously adopted; that Applicant has authorized the establishment of the Account with Bank; that the Owners/Guarantors are authorized to submit this application on the Applicant's behalf; and that all information and documents submitted in connection with the application, including without limitation federal and state income tax returns (if any), are true, correct and complete. It is further resolved that the Applicant authorizes Bank, at its discretion, to obtain any information regarding the Applicant that Bank deems necessary, including but not limited to past and present business credit records, tax records and deposit accounts, at any time in connection with this application, and in connection with any review, extension, renewal, modification or action otherwise related to the Account, and to report such information to others. The Applicant will notify Bank of any change in such information or financial condition regarding the Applicant. Applicant further acknowledges that (i) this application is subject to approval by Bank and (ii) additional information, such as Applicant's financial statements and/or tax returns, may be required in order for Bank to make its final credit decision regarding this application. Finally, it is resolved by the unanimous consent of all of the Applicant's undersigned Owners/Guarantors that, if this application is approved, Applicant and each of the undersigned agree to be bound and obligated by the terms and conditions of the Bank's Company Credit Card Agreement and Disclosure, (sometimes, the "Card Agreement"), which will accompany each Visa Business Credit Card, the terms of which Bank has the right to change at any time after providing any notice required by law.

| _____ | Owner | 1/22/2021 | | | |
|---|---|---|---|---|---|
| Owner/Guarantor Signature | Title | Date | Owner/Guarantor Signature | Title | Date |

| _____ | | | | | |
|---|---|---|---|---|---|
| Owner/Guarantor Signature | Title | Date | Owner/Guarantor Signature | Title | Date |

**F. Authorization To Obtain Personal Credit Information** (Attach Additional Page With This Section As Needed)

By my signature below, I, one of the undersigned Owners/Guarantors, in my individual capacity (even though I may place a title or designation next to my signature) hereby authorize Bank to obtain any personal information about me that Bank deems necessary, including but not limited to any information regarding past and present business or consumer credit records, including my individual consumer report, tax records and deposit accounts in connection with this application and the account, and in connection with any review, extension, renewal, modification or action otherwise related to this Account, and to report credit information to others. I agree to promptly notify Bank of any change in such information or my financial condition. I acknowledge that (i) this application is subject to Bank approval, and (ii) Bank may require additional information from me (i.e., financial statements or tax returns) in order for Bank to make a final decision regarding this application.

| Latoeria Byrd | | 1/22/2021 |
|---|---|---|
| Name | Signature | Date |
| Name | Signature | Date |
| Name | Signature | Date |
| Name | Signature | Date |

**G. Continuing Guaranty** (Attach Additional Page With This Section As Needed)

By signing below, I, in my individual capacity (even though I may place a title or designation next to my signature) hereby grant this Continuing Guaranty to Bank, its successors, transferees and assignees, for payment in full, together with all interest, attorney's fees and all other fees and charges of whatsoever nature and kind, of any indebtedness, direct or contingent, of Applicant to Bank now due or hereafter arising under or relating to the Account, through any Card Holder's use of the Account, including extensions, increases or renewals of this indebtedness (the "Guaranteed Indebtedness"). I acknowledge that I will and/or have received a direct or indirect benefit from the transaction contemplated herein. To secure this Guaranty, in addition to Bank's right of offset, I grant Bank a consensual and continuing security interest in all my money and other property that is now or hereafter on deposit with, in the possession of, or under the control of Bank (except tax deferred–retirement accounts).

I further agree that I am jointly, severally, solidarily and unconditionally liable for the Guaranteed Indebtedness with the Applicant and with each other Owner/Guarantor whose signature appears below. I acknowledge that Bank shall not be required to notify me of changes in Applicant's financial condition. As guarantor, I waive all notices and pleas of presentment, demand, dishonor, protest, discussion and division. I also authorize Bank, one or more times, without notice or prior consent to (i) extend, modify, compromise, accelerate, renew, increase or otherwise change the terms of Guaranteed Indebtedness, (ii) take and/or release collateral, or fail to perfect or continue a security interest therein, (iii) proceed against one or more guarantors without proceeding against the Applicant or another guarantor; and (iv) grant compromises, releases or substitute any Applicant, co-applicant and/or guarantor, and I hereby expressly waive any defense arising from such actions. I agree (i) I will pay Bank's costs and attorney's fees in enforcing this Guaranty; and (ii) an electronic facsimile of my signature, in any capacity, may be used as evidence of my agreement to the terms of this Guaranty and the Card Agreement. This Guaranty will be governed and interpreted under the internal laws of the State of Louisiana. If any portion of this Guaranty shall be held legally invalid or unenforceable, all remaining provisions of this Guaranty shall remain in full force and effect.

If The Applicant Is A Legal Entity, Each Owner, Partner Or Member Must Sign Below And Include Their Titles And Provide Information Required On The Owner/Guarantor Profile Sections Herein.

| | Owner | 1/22/2021 | | | |
|---|---|---|---|---|---|
| Owner/Guarantor's Name | Title | Date | Owner/Guarantor's Name | Title | Date |
| Owner/Guarantor's Signature | Title | Date | Owner/Guarantor's Signature | Title | Date |

**B1. Owner/Guarantor Profile** (A Card will be issued for EACH OWNER)

Please provide the following information on each owner, partner, principal, member or co-applicant (as applicable). If there is more than one, please complete for each one.

| Latoeria D Byrd | 100.00 | | |
|---|---|---|---|
| Name | % of ownership | | |
| Social Security Number | DOB | | |
| Owner | $ 100,868.00 | | |
| Occupation | Annual Wages | | |
| 2895 Rebecca Dr E | | | |
| Home Address | | | |
| Mobile | | Al | 36618 |
| City | | State | Zip |
| | Alabama | 9/6/2018 | 9/8/2023 |
| Driver's License or Government ID No. | Issuing Authority | Issue Date | Exp. Date |
| cowboyxm@gmail.com | | (251) 656-8784 | |
| Email Address | | Home Phone | |

US Citizen or Permanent Alien ■ Yes  □ No

**FINANCIAL INFORMATION**

| $ 67,000.00 | |
|---|---|
| Total Assets | |
| $ 0.00 | |
| Mortgages | |
| $ 5,500.00 | |
| Total Liabilities (include Home Loan) | |
| $ 0.00 | |
| Annual Other Income* | |
| 0 | |
| Source of Other Income | |

*Alimony, Child Support or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.

## H. Hancock Whitney Points Plus Business Rewards

The corporate account holder will elect whether to earn and redeem points for its own account or, at its discretion, to permit individual Card Holders to earn and redeem points.

■ All points roll up to corporate account and owners are authorized to redeem points on behalf of company.

□ Points are earned and redeemed on individual cards by each Card Holder.

## Important Information About Procedures For Opening A New Account

### USA PATRIOT ACT NOTICE

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you or your business. We may also ask to see your driver's license or other identifying documents.

Hancock Whitney thanks you for your understanding and for joining us in securing a safer tomorrow.

Please note: If you fail to provide the required information, documents used to verify your identity, or documents proving the existence of your business within a reasonable period of time of establishing an account, we will initiate procedures to restrict access to or close your account.

## Bank Use Only

| Max Tracking Information | Special Instructions | | Date | Branch |
|---|---|---|---|---|
| Approval Limit | Approved By | | Officer Number | |
| If a Corporation, is it in good standing with the Secretary of State's Office? □ Yes  □ No | | S/C Code | Jurisdiction | |
| Entity Name | TIN | | | |

Hancock Whitney Bank, Member FDIC. All loans and accounts subject to credit approval.

Terms and conditions apply.

25143

2/2020

EXHIBIT D

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $70,000.00 | 04-23-2021 | 04-23-2026 | 33101344311 | | | A2A | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** COWBOY XM MOTORSPORT INC.
148 A E I 65 Service Rd. N.
Mobile, AL 36607

**Lender:** HANCOCK WHITNEY BANK
DAUPHIN STREET BUS BNKG
25 N BELTLINE HWY
MOBILE, AL 36608

**Principal Amount: $70,000.00** **Date of Note: April 23, 2021**

**PROMISE TO PAY.** COWBOY XM MOTORSPORT INC. ("Borrower") promises to pay to HANCOCK WHITNEY BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seventy Thousand & 00/100 Dollars ($70,000.00), together with interest on the unpaid principal balance from April 23, 2021, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.250% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 59 payments of $1,299.07 each payment and an irregular last payment estimated at $1,299.28. Borrower's first payment is due May 23, 2021, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on April 23, 2026, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: HANCOCK WHITNEY BANK, LENDING SERVICES, P. O. BOX 211269 MONTGOMERY, AL 36121.**

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 18.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance under this Note and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Alabama.**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of MOBILE County, State of Alabama.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

# PROMISSORY NOTE
## (Continued)

**COLLATERAL.** Collateral securing other loans with Lender may also secure this loan. To the extent collateral previously has been given to Lender by any person which may secure this loan, whether directly or indirectly, it is specifically agreed that, to the extent prohibited by law, all such collateral consisting of household goods will not secure this loan. In addition, if any collateral requires the giving of a right of rescission under Truth in Lending for this loan, such collateral also will not secure this loan unless and until all required notices of that right have been given.

**FINANCIAL STATEMENTS AND INFORMATION.** Borrower agrees to provide to the Lender upon request both true and correct current financial statements and tax returns in form and substance satisfactory to the Lender. The financial statements shall include, among other things, detailed information regarding (i) any entities, such as corporations, partnerships, or limited liability companies of which the Borrower is the majority owner and (ii) any entities of which the Borrower is not the majority owner, but for which Borrower is directly or contingently liable on debts or obligations of any kind incurred by those entities. All financial statements or records submitted to Lender via electronic means, including, without limitation by facsimile, open internet communications or other telephonic or electronic methods, including, without limitation, documents in Tagged Image Format Files ("TIFF") or Portable Document Format ("PDF") shall be treated as originals, fully binding and with full legal force and effect and the parties waive any rights they may have to object to such treatment. The Lender may rely on all such records in good faith as complete and accurate records produced or maintained by or on behalf of the party submitting such records.

**ADDITIONAL COLLATERAL.** To the extent permitted by law, as further collateral security for the repayment of this Note or Credit Agreement and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations, in principal, interest, fees, costs, expenses and attorneys' fees, and for the payment and performance of all agreements with respect to any swap, forward, future, or derivative transaction or option or similar agreement involving, or settled by reference to, one or more interest rates, currencies, commodities, equity or debt instruments or securities, or economic, financial or pricing indices or measures of economic, financial or pricing risk or value, that Borrower (or any of them) may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), Borrower is granting Lender a continuing security interest in, all property of Borrower of every nature or kind whatsoever (with the exception of IRA, pension, and other tax-deferred accounts) owned by Borrower or in which Borrower has an interest that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender in definitive form, book entry form or in safekeeping, custodian accounts, securities accounts, including instruments, negotiable instruments, certificates of deposit, commercial paper, stocks, bonds, treasury bills and other securities, investment property, financial assets, security entitlements, documents, documents of title, payment intangibles, goods, chattel paper, and any general intangibles not previously listed, and Borrower hereby grants to Lender a right of set-off and/or compensation with respect to all such property. Borrower further hereby releases Lender from any obligation to take any steps to collect any proceeds of or preserve any of Borrower's rights, including, without limitation, rights against prior parties, in the collateral in which Lender possesses a security interest, and Lender's only duty with respect to such collateral shall be solely to use reasonable care in the physical preservation of the collateral which is in the actual possession of Lender. Collateral securing other loans with Lender may also secure this Note or Credit Agreement as a result of cross-collateralization.

**ADDITIONAL RIGHT OF SETOFF.** In addition, in order to further secure all obligations, Borrower pledges to Lender, and grants to Lender a continuing lien and security interest in, and a right of set-off on, all property of Borrower, including any such property Borrower holds jointly with someone else, that is now or hereafter on deposit with, in the possession of, under the control of or held by Lender or any financial institution affiliate of the Lender, including, without limitation, all cash, deposit accounts, funds on deposit, stocks, bonds, treasury obligations and other securities, investment property, financial assets, securities accounts, notes, documents, instruments, certificates of deposit, items, chattel paper, and other property (except IRA, pension, other tax-deferred retirement accounts and any accounts or property held in a trust or fiduciary capacity for which setoff would be prohibited by law), together with all property added to or substituted for any of the foregoing, and all interest, dividends, income, fruits, accessions and proceeds of any of the foregoing.

**OTHER COSTS AND FEES.** Borrower further agrees to pay any and all charges, fees, costs and/or taxes levied or assessed against Lender in connection with this Note and/or any collateral, asset or other property which is pledged, mortgaged, hypothecated or assigned to Lender or in which Lender possesses a security interest, as security for this Note.

**ADDITIONAL DEFAULTS AND ACCELERATION.** In addition to the Events of Default set forth above, Lender shall have the right, at its sole option, to insist upon immediate payment (to accelerate the maturity) of this Note should any type of lien, judgment, levy, seizure, garnishment, tax lien, or court order occur affecting any assets of Borrower, or any guarantor, surety or accommodation party (or any one of them) on this Note.

**NO NOVATION IF EARLIER NOTE CANCELLED.** If an earlier note of any Borrower is cancelled at the time of execution hereof, then this Note constitutes an extension, but not a novation, of the amount of the continuing indebtedness, and Borrower agrees that all security rights held by Lender under the earlier note shall continue in full force and effect.

**WAIVER OF JURY TRIAL.** Borrower and Lender knowingly, voluntarily and irrevocably waive, to the fullest extent permitted by applicable law, any and all rights either may have to trial by jury in any legal proceeding based on, arising out of, or in any way related to: this Agreement, the obligations, any notes, loan agreements, or any other loan document or agreement executed or contemplated to be executed in connection with any of the obligations; or any of the transactions contemplated hereby or thereby. This jury waiver also applies to any claim, counterclaim, cause of action or demand arising from or related to (i) any course of conduct, course of dealing, or relationship of Borrower, any obligor, or any other person with Lender or any employee, officer, director or assignee of Lender in connection with the obligations; or (ii) any statement (whether verbal or written) or actions of any person by or on behalf of Lender to Borrower, any obligor, or any other person in connection with the obligations, regardless of whether such cause of action or demand arises by contract, tort or otherwise. Borrower hereby acknowledges that this waiver of jury trial is a material inducement to the Lender in extending credit to the Borrower, that the Lender would not have extended such credit without this jury trial waiver, and that Borrower has been represented by an attorney or has had an opportunity to consult with an attorney in connection with this jury trial waiver and understands the legal effect of this waiver. Borrower further certifies that no person has represented to it, expressly or otherwise, that Lender or any other person would not, in the event of a legal proceeding, seek to enforce the foregoing waiver.

**SALE/ASSIGNMENT.** Borrower acknowledges that Lender has the right to sell, assign, transfer, negotiate, or grant participations in all or any part of this Note and any related obligations, without notice to the undersigned or any other obligor and that Lender may disclose any documents and information which Lender now has or later acquires relating to the Borrower or to any collateral or to any obligor or this Note in connection with such sale, assignment, transfer, negotiation, or grant. Borrower agrees that Lender may provide information relating to this Note or relating to Borrower to Lender's parent, affiliates, subsidiaries and service providers.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PROMISSORY NOTE**
**(Continued)**

Loan No: 33101344311                                                                 Page 3

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE.  BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

COWBOY XM MOTORSPORT INC.

By: _____ (Seal)
Latecria D. Byrd a/k/a Latoeria Byrd, President of
COWBOY XM MOTORSPORT INC.

**EXHIBIT E**

## COMMERCIAL GUARANTY

| | | | |
|---|---|---|---|
| **Borrower:** | COWBOY XM MOTORSPORT INC.<br>148 A E I 65 Service Rd. N.<br>Mobile, AL  36607 | **Lender:** | HANCOCK WHITNEY BANK<br>DAUPHIN STREET BUS BNKG<br>25 N BELTLINE HWY<br>MOBILE, AL  36608 |
| **Guarantor:** | Latoeria D. Byrd a/k/a Latoeria Byrd<br>2895 Rebecca Dr. E.<br>Mobile, AL  36618 | | |

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.**  For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents.  This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness.  Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.  Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.**  The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative.  This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties.  Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.**  THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS.  ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.**  This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full.  If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing.  Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing.  Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation.  For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due.  For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness.  This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death.  Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect.  Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty.  A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty.  **It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty.  This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).**

**GUARANTOR'S AUTHORIZATION TO LENDER.**  Guarantor authorizes Lender, either before or after any revocation hereof, **without notice or demand and without lessening Guarantor's liability** under this Guaranty, from time to time:  (A)  prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower;  (B)  to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term;  (C)  to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral;  (D)  to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose;  (E)  to determine how, when and what application of payments and credits shall be made on the Indebtedness;  (F)  to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine;  (G)  to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and  (H)  to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.**  Guarantor represents and warrants to Lender that  (A)  no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty;  (B)  this Guaranty is executed at Borrower's request and not at the request of Lender;  (C)  Guarantor has full power, right and authority to enter into this Guaranty;  (D)  the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor;  (E)  Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein;  (F)  upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided;  (G)  no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition;  (H)  no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened;  (I)  Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and  (J)  Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition.  Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor  any information or documents acquired by Lender in the course of its relationship with Borrower.

**ADDITIONAL INFORMATION REGARDING FINANCIAL STATEMENTS AND INFORMATION.**  With respect to any provision in this Agreement regarding financial statements and information, Guarantor agrees to provide to Lender upon request both true and correct current financial statements and tax returns in form and substance satisfactory to Lender. The financial statements shall include, among other things, detailed information regarding (i) any entities, such as corporations, partnerships, or limited liability companies in which the Guarantor is the majority owner and (ii) any entities in which Guarantor is not the majority owner, but for which Guarantor is directly or contingently liable on debts or obligations of any kind incurred by those entities.  All financial statements or records submitted to Lender via electronic means, including, without limitation by facsimile, open internet communications or other telephonic or electronic methods, including, without limitation, documents in Tagged Image Format Files ("TIFF") or Portable Document Format ("PDF") shall be treated as originals, fully binding and with full legal force and effect and the parties waive any rights they may have to object to such treatment.  The Lender may rely on all such records in good faith as complete and accurate records produced or maintained by or on behalf of the party submitting such records.

## COMMERCIAL GUARANTY
### (Continued)

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**ADDITIONAL MEANING OF THE WORDS RELATED DOCUMENTS.** To the extent permitted by applicable law, when used in this Agreement, the meaning of the words "Related Documents" shall include, in addition to and without limiting the definition ascribed to the words "Related Documents" herein, all agreements with respect to any swap, forward, future, or derivative transaction or option or similar agreement involving, or settled by reference to, one or more interest rates, currencies, commodities, equity or debt instruments or securities, or economic, financial or pricing indices or measures of economic, financial or pricing risk or value.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of MOBILE County, State of Alabama.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

## COMMERCIAL GUARANTY
**(Continued)**

Loan No: 33101344311

Page 3

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waiver of Jury Trial.** Borrower and Lender knowingly, voluntarily and irrevocably waive, to the fullest extent permitted by applicable law, any and all rights either may have to trial by jury in any legal proceeding based on, arising out of, or in any way related to: this Agreement, the obligations, any notes, loan agreements, or any other loan document or agreement executed or contemplated to be executed in connection with any of the obligations; or any of the transactions contemplated hereby or thereby. This jury waiver also applies to any claim, counterclaim, cause of action or demand arising from or related to (i) any course of conduct, course of dealing, or relationship of Borrower, any obligor, or any other person with Lender or any employee, officer, director or assignee of Lender in connection with the obligations; or (ii) any statement (whether verbal or written) or actions of any person by or on behalf of Lender to Borrower, any obligor, or any other person in connection with the obligations, regardless of whether such cause of action or demand arises by contract, tort or otherwise. Borrower hereby acknowledges that this waiver of jury trial is a material inducement to the Lender in extending credit to the Borrower, that the Lender would not have extended such credit without this jury trial waiver, and that Borrower has been represented by an attorney or has had an opportunity to consult with an attorney in connection with this jury trial waiver and understands the legal effect of this waiver. Borrower further certifies that no person has represented to it, expressly or otherwise, that Lender or any other person would not, in the event of a legal proceeding, seek to enforce the foregoing waiver.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means COWBOY XM MOTORSPORT INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Latoeria D. Byrd a/k/a Latoeria Byrd, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means HANCOCK WHITNEY BANK, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED APRIL 23, 2021.

THIS GUARANTY IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS GUARANTY IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GUARANTOR:

X _____ (Seal)
Latoeria D. Byrd a/k/a Latoeria Byrd